UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GOODMAN JEWELERS, INC., <br> GOODMAN COURT STREET, INC., and <br> GOODMAN QUAD LIMITED, d/b/a <br> TWO NORTH MERIDIAN CO., <br><br> Plaintiffs, <br><br> v. <br><br> WALNUT BREWERY, INC., <br> a Colorado Corporation, <br><br> Defendant. | Case No. 1:10-cv-01392-TWP-MJD |

## ENTRY ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

This case comes before the Court on Plaintiffs' Goodman Jewelers, Inc., Goodman Court Street, Inc., and Goodman Quad Limited, d/b/a Two North Meridian Co.'s (collectively "Landlord") Complaint for Declaratory Judgment (Dkt. 1) of the parties' rights and responsibilities under the terms of a restaurant lease. Defendant Walnut Brewery, Inc.'s ("Tenant") filed a Rule 12(b)(6) Motion to Dismiss (Dkt. 10) to which the Court gave notice of Rule 56 Conversion (Dkt. 20). Tenant has moved this Court to grant Summary Judgment (Dkt. 26) in its favor against Landlord and Landlord has filed a Cross Motion for Summary Judgment against Tenant (Dkt. 34). For the reasons stated herein, the Court **GRANTS** Tenant's Motion for Summary Judgment (Dkt. 26) and **DENIES** Landlord's Motion for Summary Judgment (Dkt. 34).

### I.  BACKGROUND

On or about September 16, 1995, Landlord and Tenant entered into a Restaurant Lease Agreement ("Lease"). The Lease involved approximately 10,002 square feet of property located

in downtown Indianapolis, Indiana. The Lease was scheduled to terminate on May 31, 2011. However, Tenant was provided the option to extend the term of the Lease for two additional terms of sixty months. The Lease contained the following language:

### Article II - Grant, Term and Options to Extend

**2.06 Options to Renew**: Provided Tenant shall not then be in material default hereunder, Tenant shall have the option to extend the term of the Lease for Two (2) additional terms of Sixty (60) months each upon the same terms and conditions herein contained. To exercise its option(s) hereunder, Tenant shall deliver notice of said election to Landlord at least Two Hundred Seventy (270) days prior to the expiration of the then existing term. In the event the initial term or any option is not renewed or extended, Landlord shall not show the Leased Premises to prospective tenants sooner than One Hundred Eighty (180) days before the end of the then term.

….

### Article XXI – Miscellaneous

**21.05 Notices and Payments**: Any notice by Tenant to Landlord must be served either by certified mail, postage prepaid, addressed to Landlord at the place designated for the payment of rent, or at such other address as Landlord may designate from time to time.…

Restaurant Lease Agreement, Ex. A to Pls.' Compl.

Pursuant to the Lease provisions, Tenant was required to provide notice two hundred and seventy (270) days prior to the expiration of the then existing term in order to exercise its right to renew. Two hundred and seventy days before the scheduled end of the lease term was September 3, 2010.

On August 9, 2010, Tenant sent a signed letter to Landlord expressing its intent to exercise the option to renew. This letter was signed by John Buerge, Director of Development and Property Management of Rock Bottom Restaurants, Inc. and sent "signature required" through third party courier United Parcel Services ("UPS"). UPS delivered the letter to Landlord

on August 12, 2010. Tenant also sent an email expressing its intent to exercise the option to renew the Lease to Landlord on August 9, 2010.

On September 16, 2010, over a month after the UPS delivery and nearly two weeks after the September 3, 2010 deadline, Landlord notified Tenant that it deemed Tenant's attempt at renewal ineffective, and that the Lease would expire on May 31, 2011. Tenant then filed suit with this Court seeking declaratory judgment.

Additional facts will be added as needed.

## II.     LEGAL STANDARD

Conversion of a Rule 12(b)(6) motion into a motion for summary judgment "is appropriate when the court determines that no triable issues of material fact exist." *Milwaukee Typographical Union No. 23 v. Newspapers, Inc*., 639 F.2d 386, 390 (7th Cir. 1981); *see also Chicago-Midwest Meat Assoc. v. City of Evanston*, 589 F.2d 278, 281-82 (7th Cir. 1978), *cert. denied*, 442 U.S. 946 (1979). The question of whether an optionee has properly exercised an option is a matter of contract construction, a question of law of which summary judgment is particularly appropriate. *Pinkowski v. Calumet Tp. of Lake County*, 852 N.E.2d 971 (Ind. Ct. App. 2006); *Forty–One Assoc., LLC v. Bluefield Assoc., L.P.,* 809 N.E. 2d 422, 426 (Ind. Ct. App. 2004). Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment.

Under Rule 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). As articulated by the Supreme Court, "summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole." *Id*. at 327. In ruling on a motion for summary

judgment, the *admissible* evidence presented by non-movant must be believed and all reasonable inferences must be drawn in her favor. *Zerante v. DeLuca*, 555 F. 3d 582, 584 (7th Cir. 2009).

The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion. *Celotex*, 477 U.S. at 323. When the moving party produces proper support of its motion, the burden then shifts to the non-movant. It is not enough for the non-movant merely to raise factual arguments that cast "some metaphysical doubt as to the material facts." *Baker v. Elmood*, 940 F. 2d 1013 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A party who bears the burden of proof on a particular issue … must affirmatively demonstrate, through specific factual allegations, that there is a genuine issue of material fact that requires trial. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (citation omitted).

It is not uncommon for a court to be confronted with cross-motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. "In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard." *Kohl v. Ass'n. of Trial Lawyers of America*, 183 F.R.D. 475 (D. Md. 1998).

### III.     DISCUSSION

The present case centers on the determination of the sufficiency of Tenant's notice to exercise its option to renew the lease agreement. The Court must ultimately determine whether Tenant provided adequate notice of its intention to renew and whether Rock Bottom Restaurants, Inc. ("RBRI") had authority to exercise the option.

A.      **Sufficiency of Notice**

The question of whether an optionee has properly exercised an option is a matter of contract construction, a question of law of which summary judgment is particularly appropriate. *Forty–One Assoc., LLC v. Bluefield Assoc., L.P.,* 809 N.E. 2d 422, 426 (Ind. Ct. App. 2004). "When the terms of the contract are clear and unambiguous, those terms are conclusive," and the court must apply the contract provisions. *Id.* (citations omitted). "When interpreting a contract, a court must ascertain and effectuate the intent of the parties." *Id.* "The contract must be read as a whole and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. *Id.*

Landlord argues that this Court cannot excuse Tenant's alternative delivery method. Landlord asserts that refusal of anything less than strict compliance is a consequence of the oft-stated principle of allowing parties the right to contract and fix the terms, provisions and conditions of their agreement. *Bethlehem Steel Corp. v. Sercon Corp.,* 654 N.E. 2d 1163 (Ind. Ct. App. 1995); *Rodman v. City of Wabash*, 497 N.E. 2d 234, 240 (Ind. Ct. App. 1986) (parties to a contract have the right to define their mutual rights and obligations). However, in the context of option contracts, one party's deviation from the contract may not necessarily render the exercise the option defective. In this area of law, jurisdictions have adopted varied approaches. Some courts have taken a strict compliance approach, while others have opted for a flexible analysis.

A select number of states have held that alternate delivery of notice is insufficient if the terms of the contract specifically provide for an exclusive method of delivery. Landlord cites a plethora of cases in support of its contention that Tenant's deviation from the terms of the option contract rendered its notice ineffective; however Landlord's authorities are distinguishable.

Landlord begins by citing to *Western Tire, Inc. v. Skrede*, 307 N.W. 2d 558 (N.D. Sup. Ct. 1981). The *Western* case involved a lessee that had the option to continue the lease for an additional five-year period by sending written notice by registered or certified mail at least 30 days prior to commencement of renewal period. The *Western* court found that the lease provided for an exclusive means by which the option could be exercised and that by depositing the notice into ordinary mail lessee failed to meet both manner and time period required for exercising option. The *Western* court went on to say that "the requirement of sending notice by registered or certified mail was designed to eliminate the problem of proving that the notice had been sent on time and was received." *Western*, 307 N.W.2d at 563. In the *Western* case however, "the Skredes did not receive the notice of the exercise of the renewal option on April 1, 1978" which was sent through ordinary mail rather than by registered or certified mail as the lease required. *Id.* at 561.

Landlord next relies on *Matter of Joyner*, 74 B.R. 618, 623 (Bkrtcy. M.D. Ga. 1987). *Joyner* involved a lease agreement which stated that *all notices given under the lease* were deemed properly served if delivered in writing, personally, or sent by certified mail to lessor. During trial, testimony revealed that though the letter was sent by regular mail before the expiration of the option, it was claimed to have never been received, nor was any other notice given. The *Joyner* court found that because the lease agreement specified the manner in which the lessee could extend the lease, compliance with such provisions was a condition precedent to the extension of the term. The court further found that the notice sent by regular mail did not meet the express requirements of the lease and thus was not proper.

The *Joyner* court, however, similar to *Western,* was faced with a dispute concerning actual receipt of notice, which is not at issue here. Discussion of the exclusive means by which

the option could be accepted in these cases was not for naught. The *Joyner* court went as far as to say that had "the provisions of the lease agreement been complied with, the necessity of proving notice timely sent and received would have been eliminated". *Id*. at 623. Thus, the *Joyner* case, along with the others cited by Landlord where actual notice was disputed, are distinguishable. Here, Landlord has not put the consideration of receipt of notice at issue. No facts related to untimely transmission or receipt have been pled to this Court.

Further, other courts have refused to strictly hold parties to the terms of a lease agreement when there is proof that the lessor had *actual* knowledge of the lessee's intent to exercise his option to extend under the lease agreement. In these cases, courts have recognized that use of an alternative method does not render the notice defective if the substituted method performed the same function or served the same purpose as the authorized method. *Osprey L.L.C. v. Kelly-Moore Paint Co. Inc.*, 984 P. 2d 194, 197-98 n.3-4 (Okla. 1999) (collecting cases). The *Osprey* court noted the following regarding the purpose of specifying of manner of delivery:

> The purpose of providing notice by personal delivery or registered mail is to insure the delivery of the notice, and to settle any dispute which might arise between the parties concerning whether the notice was received … a substituted method of notice which performs the same function and serves the same purpose as an authorized method of notice is not defective.

*Osprey L.L.C.*, 984 P. 2d at 199 (emphasis added); *see also Miami Beach Vacations, Inc. v. Wofford*, 262 So. 2d 683 (Fla. Dist. Ct. App. 3d Dist. 1972) (delivery by ordinary mail rather than registered mail sufficient); *Fletcher v. Frisbee*, 404 A.2d 1106 (1979) (delivery by ordinary mail rather than registered mail sufficient).

Nearly a decade later, the Colorado Court of Appeals also addressed the issue of sufficiency of alternate methods of notice in *Suss Pontiac-GMC, Inc. v. Boddicker*, 208 P.3d 269 (Colo. App. 2008) (cert. denied). The *Suss* court found that though the lease required notice

7

to be sent by certified mail, the lessee effectively exercised its purchase option by sending notice to lessor by first class mail prior to option's deadline. Importantly, the court found the following: 1) the parties did not attach special significance to the method of delivery; 2) the contract language expressed nothing more than the parties' reasonable intent to avoid potential disputes about timeliness and actual receipt; and 3) lessee's alternative delivery method fulfilled this intent because lessor received written notice, and acknowledged that fact, before the deadline expired. As articulated by the *Suss* court, provisions requiring a specific method of delivery involve the attempt to prevent issues relating to timeliness or receipt.

From what the Court can gather, Indiana has not addressed this precise issue. Regarding option contracts in general, Indiana courts have found that "by failing to comply with the option's terms, the option holder deprives himself of the right to demand the enforcement of the contract." *Brokaw v. Roe,* 669 N.E. 2d 1039, 1041 (Ind. Ct. App. 1996). This principle was articulated in *Theobald v. Chumley*, 408 N.E. 2d 603, 605 (Ind. Ct. App. 1980). In *Theobald,* the Indiana Court of Appeals dealt with an option to purchase in which an inaccurate survey resulted in the optionee attempting to purchase more land than the option agreement actually covered. The *Theobald* court stated that "The reason why courts are strict in requiring an option to be exercised specifically as to its terms and within the specified time is because of the power that the optionee exercises over the eventual formulation of a contract." *Id*. "Consequently, since the optionee is the sole party capable of consummating the option, courts require strict adherence to the option's terms when the optionee is attempting to enforce the option." *Id*.

Indiana case law provides "the *general rule* is that the optionee must strictly adhere to the option's requirements for its exercise in order to bind the optionor." *Estate of Collins v. McKinney*, 936 N.E.2d 252, 259 (Ind. Ct. App. 2010) (emphasis added) (quoting *North Side*

*Asphalt & Material Transp., Inc. v. Foreman,* 520 N.E.2d 457, 459 (Ind. Ct. App. 1988)). However, when a party indicates its intention to exercise an option "clearly and unequivocally, ... [r]ecitation of the exact terms of the agreement [is] not necessary." *Rowland v. Amoco Oil Co.,* 432 N.E. 2d 414, 417 (Ind. Ct. App. 1982); *Pinkowski v. Calumet Tp. of Lake County*, 852 N.E. 2d 971, 982 (Ind. Ct. App. 2006) (reiterating "clear and unequivocal" language); *see Candlelight Properties, LLC v. MHC Operating Ltd. Partnership*, 750 N.E.2d 1, 12 (Ind. Ct. App. 2001) (holding that optionee's "inadvertent omission of the words from its notice in and of itself was *immaterial* and *did not affect its notice of its intention to exercise the option to purchase Candlelight Village*." (emphasis added)).

Landlord argues that while Indiana courts have held the requirement of strict adherence to the options' terms, they have not explicitly spoken to how strict adherence applies to the particular situation before the Court. In this matter, Landlord does not dispute that Tenant timely delivered a letter expressing its intent to exercise its option in a manner or that it was actually received by Landlord. There is no dispute regarding these issues, no facts pled that would suggest anything less than actual, timely notice. As evidenced by the preceding discussion, the case law available to this Court regarding the effectiveness of notice which deviated from the required specifications varies and is highly contextual.[1]

---

[1] *Compare MER Properties-Salisbury v. Golden Palace, Inc*., 382 S.E. 2d 869, 871 (N.C. App. 1989) and *Gerson Realty Inc. v. Casaly*, 316 N.E. 2d 767 (Mass. App. 1974) (option to renew was effectively exercised where the optionee sent notice by certified mail despite the fact that the lease specified that notice shall be sent by registered mail, determining that essentially, certified mail was held the functional equivalent of registered mail) *with Seven Fifty Main Street Associates Ltd. P'ship v. Spector* , 497 A. 2d 96 (Conn. App. 1985) (lease stated that tenant had right to renew by certified mail but tenant's notice sent by ordinary mail was *never received*) and *2039 Jericho Turnpike Corp. v. Caglayan*, 882 N.Y.S. 2d 311, 313 (N.Y.A.D. 2 Dept. 2009) (court found that tenants were required to send written notice by certified mail and handwriting on the bottom of a fax cover sheet that *neither the landlord nor his attorney acknowledged receipt* was insufficient) *and Brokaw v. Roe*, 669 N.E. 2d 1039, 1042 (Ind. Ct. App. 1996) (court found tenant asking landlord to extend the agreement "indefinitely" by a handwritten agreement was ineffective because it did not satisfy the *written* notice required to exercise the option).

The Court agrees with the general sentiment that the right to extend [or cancel] a lease and under what terms is generally the "product of hard bargaining and careful drafting," and that "the length of the lease term, and the right to extend [or cancel] it, is often the single most important economic aspect of the commercial tenancy negotiation," *Thomson Learning, Inc. v. Olympia Properties, LLC*, 850 N.E. 2d 314, 322 (Ill. App. 2 Dist. 2006) (internal citations and quotations omitted). The Court further agrees with the well-reasoned cases from numerous jurisdictions which support the commonsense view that where actual notice indisputably occurred, minor deviations from the contract terms governing notice do not render the notice defective. A contrary ruling would elevate *form* over *substance*. Moreover, the Court believes that this decision best aligns with existing Indiana law.

This is particularly evident in the Indiana Court of Appeals decision *Rowland v. Amoco Oil Co.*, 432 N.E. 2d 414, 416 (Ind. Ct. App. 1982). *Rowland* involved a challenge to an attempt to exercise an option to purchase. Although the specific challenge in the *Rowland* case was to a typographical error relating to the purchase price, this Court would be remiss not to draw attention to another, pertinent aspect of this case. In *Rowland*, the option to purchase required notice to be sent by the lessor via *registered mail* at least thirty days prior to the expiration of the lease. However, much like the case before the Court today, lessee sent notice by an unauthorized manner, *certified mail*. Notably, neither the court nor the landlord challenged the effectiveness of notice based upon the fact that tenant sent the notice via certified mail. In fact, the *Rowland* court stated that "once Amoco notified the Rowland Heirs by *certified mail* that it was exercising the option, the terms therein became binding and enforceable by both parties." *Rowland v. Amoco Oil Co.*, 432 N.E. 2d 414, 417 (Ind. Ct. App. 1982).

Ultimately, a notice requirement evidences both the intent of the parties that there was to be no 'extension' or 'renewal' of the lease without the required notice and also the intent to prevent a subsequent dispute as to receipt of notice. Here though, the Lease specified certified mail as the exclusive means of providing notice, the notice provided served the same function and purpose as the authorized method. The notice sent by third party courier UPS, "signature required," was sufficient as the notice was timely received by Landlord and Tenant clearly and unequivocally expressed the intent to exercise its option. Accordingly, under the circumstances involved in this case, the Court finds that Tenant's notice was sufficient.

### B. Walnut Brewery, Inc. d/b/a Rock Bottom Brewery

Landlord further argues that because Rock Bottom Restaurants Inc. ("RBRI") was not a party to the Lease, it lacked the authority to exercise the option on behalf of Tenant. Landlord is correct in stating that under its "Fundamental Lease Provisions," the Lease designates as its Tenant, Walnut Brewery, Inc. *d/b/a* Rock Bottom Brewery ("Rock Bottom"). The Lease does not identify RBRI as a tenant.

Tenant provides the following in response to Landlord's argument: (1) the Lease stated the "d/b/a" name under which Walnut Brewery was conducting business, (2) the notice letter included identifying Lease terms and the property address, (3) previous correspondence sent from Tenant to Landlord was written on RBRI letterhead, and (4) as evidenced by the Affidavit of Gary Foreman designated in opposition to Landlord's Motion for Summary Judgment, Walnut Brewery is a wholly owned subsidiary of RBRI and is authorized to act on its behalf.

Because Tenant expressly gave RBRI the authority to administer all aspects of the Lease, including exercising the option on its behalf, the Court declines to adopt Landlord's position that

11

the notice was ineffective due to the fact that the letter was signed by "John Buerge, JD/MBA, Director of Development & Property Management, Rock Bottom Restaurants, Inc."

## IV. CONCLUSION

For the reasons stated herein, Landlord's Motion for Summary Judgment (Dkt. 34) is **DENIED**. Tenant's Motion for Summary Judgment (Dkt. 26) is **GRANTED** as the Court finds Tenant timely exercised its option to renew its lease. A separate judgment shall enter in favor of Tenant.

SO ORDERED.

DATE: 08/22/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Hilary G. Buttrick
ICE MILLER LLP
hilary.buttrick@icemiller.com

Zeff A. Weiss
ICE MILLER LLP
weiss@icemiller.com

Philip A. Whistler
ICE MILLER LLP
philip.whistler@icemiller.com

S. Gregory Zubek
WHITHAM HEBENSTREIT & ZUBEK
sgz@whzlaw.com